Material Facts in Support
of Brief in Opposition of
Defendants Summary Judgment

1. On 5-27-20 Plaintiff was removed out the Intermediate Restraint System and escorted back to the Restricted Housing Unit and placed back into EA 12 cell by defendant Simpson at 4:42 PM without a mattress (Ex. ███ R, DC 121 Report).

2. On 5-27-20 defendants Taylor, Morris, Kimmel and Storm were working the Restricted Housing Unit and was aware that defendant Simpson put Plaintiff inside EA 12 cell without a mattress, and none of these defendants attempted to provide Plaintiff with a mattress or heard him deny a mattress. (Ex. B at 2-3, Ex C at 2-3, Ex D at 2-3, Ex E at 2-3 and Ex. F at 2-3).

3. According to grievance number 870958 initial response given by defendant Styka is that defendant Simpson and Morris offered Plaintiff a mattress, T-shirt and smock three times on May 27, 2020 and

-3-

Plaintiff refused it. (Ex. G)

4. Defendant Simpson allegedly filed a DC-121 Report not until May 28, 2020 at 2:28pm for Plaintiff refusal of cell contents. (Ex. H, note there is no signature from Defendant Simpson or shift commander)

5. Defendant Simpson admits that he placed Plaintiff back into EA 12 cell without a mattress and bedding material on May 27, 2020. (Ex I at pg 8)

6. Defendant Simpson also states that when him and defendant Morris went to Plaintiff cell on May 27, 2020 and put a smock blanket in the secure slot that they had a mattress with them. (Ex I at pg 9)

7. Defendant Simpson also states that he believed that defendant Morris carried the mattress to Plaintiff cell on May 27, 2020 and Plaintiff refused it. (Ex J at pg 4)

8. Defendant Morris admits that he

-4-

never took a mattress to Plaintiff cell on May 27, 2020 (Ex. B at pg 2).

9. On May 28, 2020 Defendants Reitton, Gourley, Wynder, Smith, Connolly and Styka all made a round in the Restricted Housing Unit and was aware that Plaintiff was in EA12 cell without a mattress.

10. Defendant Styka notified PRC and states that she was with PRC when they directed defendant Connolly to provide Plaintiff with a mattress and Plaintiff refused when defendant Connolly tried to provide him with one. (Ex K at 2-3)

11. Defendant Connolly states that PRC or defendant Styka did not direct him to give Plaintiff a mattress on May 28, 2020 and that he never offered Plaintiff a mattress at any time and he refused to accept it. (Exhibit L. at 3-5)

12. On May 28, 2020 defendant Smith was made aware by Plaintiff that he did not have a mattress inside of his cell and informed defendant Gourley that Plaintiff

5

should have a mattress.(Ex. M at pg 9).

13. Defendant Gourley admits that Plaintiff called him to his cell and showed him the inside of his cell with nothing inside but a metal bunk and toilet and even remember giving instructions to give Plaintiff a mattress but do not recall to whom he instructed to give Plaintiff a mattress. (Ex. N at 1-2)

14. Defendant Wynder admits to making a round in the RHU on May 28, 2020 and speaking to Plaintiff about having nothing in his cell but a metal bunk and toilet and Remember giving orders to give Plaintiff a mattress but do not recall to whom he instructed to give Plaintiff a mattress. (Ex. O at 2-3).

15. Defendant Brittain admits to knowing that defendant Simpson put Plaintiff back in EA12 cell without a mattress on May 27, 2020 and that she made a round and was apart of PRC on May 28, 2020. (Ex. P at 3-5)

-6-

16. Grievance number 891791 filed by plaintiff on defendants Brittain, Cowley, Wynder, Simpson, Taylor, Morris, Kimmel, Smith, Connolly and Styka about the events that took place on May 28, 2020 (Ex. Q)

17. Declarations by (Plaintiff) James Dukes, Alante Manigault, Eric Burley, and Rodney Wilson explaining the events that took place on May 27, 2020 and May 28, 2020, (Ex. A)

## Legal Standard

Summary of Judgment should be granted if if pleadings, depositions, answer to Interrogatories and admissions on file together with affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) Thus the courts task is not to resolve dispute issues of fact but to determine whether there exist any factual issues to be tried. The non moving party must raise more than a mere scintilla of evidence in its favor in order to overcome a summary

-7-

judgment motion. Further the non moving party cannot rely on unsupported assertions, conclusory allegations or mere suspicion in attempting to survive a summary motion. Distilled to its essence the summary of judgment standard requires the non moving party to create a sufficient disagreement to require submission of evidence to a jury.

## Memorandum of Points And Authorities

1. Defendants Brittain, Courley, Wynder, Simpson, Taylor, Morris, Kimmel, Storm, Smith, Connolly and Styka violated Plaintiff Eighth Amendments rights prohibition of cruel and unusual punishment and when they acted with deliberate indifference when they deprived Plaintiff a mattress, which is a basic human need. It is well-settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. at 31. (1993). In this section, we address

-8-

prison conditions violate the cruel and unusual punishment. As will be seen below, the courts will uphold an Eighth Amendment challenge to prison conditions only inmates prove: (1) that prison conditions are serious in the sence they deprive them of basic human needs and life necessities; and (2) prison officials were deliberately indifferent to those serious prison conditions.

Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference means that a prison official will be held liable under the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and disregard that risk by failing to take reasonable measure to abate it" Id. at 847. Inmates "need not show that a prison official acted or failed to act despite his knowledge of a substantial risk of serious harm" Id at 842. The two key precedents a Rhodes v. Chapman, 452 U.S. 337 (1981), and Wilson v. Seiter 501 U.S. 294 (1991). At issue in Rhodes was whether housing two inmates in a cell designed for one constitutes cruel and unusual punishment 452 U.S. at 339. The

4.

Court did note that prison conditions "alone or in combination may deprive inmates of the minimal civilized measure of life's necessities" and thus violate the Eighth Amendment. Id. at 347. See also, Beers-Capitol v. Whetzel, 256 F.3d 120, 138 (3d Cir. 2001)("deliberate indifference standard" requires more than evidence that the defendants should have recognized the excessive risk and respond to it; it requires evidence that the defendant must have recognized the excessive risk and ignored it").

Defendants Brittain, Gourley, Wynder, Simpson, Taylor, Morris, Kimmel, Storm, Smith, Connolly and Styka violated Plaintiff Americans with Disabilities Act Rights when they deprived Plaintiff a mattress and or failed to provide Plaintiff with a mattress and he was forced to sleep on a metal bunk. Plaintiff has a paralyzed right arm and suffers from mental illness.

In Pennsylvania Department of Corrections v. Yeskey, the Supreme Court held that Title II applied to state prisons, noting

10.

that "the statute's language unmistakably includes state prisons and prisoners within its coverage." 524 U.S. 206, 209 (1998). State and local prisons that deny qualified inmates -- by reason of disability -- the benefits of programs and activities provided to other inmates, violate the ADA.

In United States v. Georgia, the Supreme Court agreed that inmates could seek nominal and compensatory damages for Title II violations but only "for conduct that actually violates the fourteenth Amendment." 546 U.S. 151, 159 (2006). In the case before it, a Georgia prisoner (Goodman) claimed he was confined in a cell in which he could not turn his wheelchair around, rendering his toilet inaccessible. Id. at 155. Because such mistreatment also constituted a potential Eighth Amendment violation the court agreed that Goodman could pursue money damages against Georgia authorities for Title II violations. Id. at 159.

Defendants Brittain, Cowsley, Wynder, Simpson, Taylor, Morris, Kimmel, Storm, Smith, Connelly, and Styka retaliated against Plaintiff for filing a previous civil lawsuit and grievance against other officers in the Restricted Housing Unit at SCI Frackville for housing him on the top bunk and he was bottom bunk status, that caused Plaintiff to fall from the top bunk and suffer injuries to his head. In this case the defendants left Plaintiff in a cell on May 27, 2020 and May 28, 2020 without a mattress and forced him to sleep on a metal bunk.

To establish a prima facie case of retaliation, Plaintiff must demonstrate: "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercising of his constitutional rights and the adverse action taken against him." Thompson v. Pitkins, 514 F. App'x 88, 90 (3d Cir. 2013) (quoting Mitchell v. Horn,

12.

318 F.3d 523, 530 (3d Cir. 2003)

## Conclusion

Plaintiff Respectfully Request this honorable court to deny defendants motion for Summary Judgment. The evidence presented in Plaintiff opposition to defendants motion for Summary Judgment shows that defendants are not entitled to Summary Judgment on all constitutional violations as a a matter of law.

Respectfully Submitted,
James Dukes

## Certificate of Service

I, James Dukes, hereby certify that on November 5, 2021, I caused to be served a true and correct copy of Plaintiff motion opposing defendants summary judgement with exhibits attached.

Clerk of Courts
United States District Court
240 W. 3rd Street Suite 218
Williamsport, PA 17701

Mary Katherine Yarish
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120