IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES DUKES, | No. 1:21-CV-00037 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| SUPERINTENDENT BRITTAIN, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MAY 3, 2022

Plaintiff James Dukes filed this *pro se* Section 1983[1] action, asserting constitutional tort claims against numerous prison officials at the State Correctional Institution in Frackville, Pennsylvania (SCI Frackville). Presently pending is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For following reasons, the Court will grant Defendants' Rule 56 motion in its entirety.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.  **FACTUAL BACKGROUND**[2]

The facts underlying the claims in this case are largely undisputed.  At all relevant times, Dukes was incarcerated at SCI Frackville and housed in either the Restricted Housing Unit (RHU) or a Psychiatric Observational Cell (POC).[3]  Dukes previously filed a different Section 1983 lawsuit in this Court for an unrelated 2019 incident involving a fall from a bunk at SCI Frackville.[4]  That suit was filed against six SCI Frackville prison officials—none of whom are named in the instant lawsuit—and is still ongoing.[5]

The claims in the instant case involve events that occurred at SCI Frackville from May 26 to May 28, 2020.[6]  Around 3:00 p.m. on May 26, 2020, Dukes covered the door to his RHU cell and refused to respond to orders given by

---

[2]  Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Defendants filed their statement of material facts, Doc. 50, but instead of responding to that statement, Dukes filed his own independent statement of material facts, *see* Doc. 55.  Dukes' filing is not permitted by Local Rule 56.1.  *See Barber v. Subway*, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (explaining that separate, nonresponsive statement of facts by nonmovant is "neither contemplated nor permitted by the Local Rules").  Accordingly, Defendants' statement of material facts, Doc. 50, will be considered admitted unless clearly contradicted by the record.  *See* LOCAL RULE OF COURT 56.1.

[3]  Doc. 50 ¶ 5.

[4]  *Id.* ¶¶ 2-3; *Dukes v. Mohl*, No. 1:20-CV-315, Doc. 1 (M.D. Pa. Feb. 24, 2020).

[5]  *See* Doc. 50 ¶¶ 2, 4, 39.  In his amended complaint in *Dukes v. Mohl*, Dukes names SCI Frackville correctional officers Brian Mohl, David Kraynack, Christopher Lyons, and Jeffrey Tedesco.  *Dukes v. Mohl*, No. 1:20-CV-315, Doc. 38 ¶¶ 2-6 (M.D. Pa. July 13, 2020).  Dukes then filed a second amended complaint, adding SCI Frackville correctional officers "Testen" and "Captain Albert."  *Dukes v. Mohl*, 1:20-CV-315, Doc. 77 ¶¶ 2-3.

[6]  Doc. 50 ¶ 5.

correctional staff to uncover his door.[7] Dukes was forcibly removed from his RHU cell but several hours later was returned to the same cell, where he informed staff that he was suicidal and—using his inmate jumpsuit as a makeshift noose—threatened to hang himself.[8] Dukes was again removed from his RHU cell and this time was taken to the Behavioral Management Unit (BMU).[9]

Because Dukes had expressed suicidal ideations and exhibited intent to commit self-harm, he was placed in an intermediate restraint system inside of a POC cell.[10] Dukes spent the night of May 26 in the POC cell with a bedding-materials restriction in place.[11] The following day, correctional staff removed the restraint system and returned Dukes to his RHU cell.[12] However, due to the events of the previous day, the bedding-materials restriction that had been implemented by prison officials remained in place.[13]

The crux of the parties' factual dispute involves the events of May 27, 2020. According to Dukes, when he was returned to his RHU cell that afternoon, there was no mattress on his bunk.[14] Dukes attests that he repeatedly summoned defendant correctional officers Storm, Morris, and Kimmel to his cell and asked

---

[7] Id. ¶ 6.
[8] Id. ¶¶ 7-9.
[9] Id. ¶¶ 9-10.
[10] Id. ¶ 12.
[11] Id. ¶¶ 15-16.
[12] Doc. 50 ¶ 19.
[13] Id. ¶¶ 16, 20.
[14] Doc. 54-1 at 3 ¶ 8.

them for a mattress, but that his requests were either ignored or denied.[15] Later that evening, he again asked Morris for a mattress and, shortly after 9:00 p.m., Morris and defendant Lieutenant Simpson came to his cell.[16] Dukes avers that Simpson gave him a "smock blanket" and told him "this is all you get."[17] Dukes maintains that he refused the smock blanket and told Simpson that he wanted a mattress, which request was again denied.[18] Defendants contend that, contrary to Dukes' claims, he was offered a mattress "several times" on May 27 and refused those offers.[19]

Nevertheless, it is undisputed that Dukes spent the night of May 27 without a mattress and slept on a bare metal bunk.[20] The following day, Dukes spoke with defendants Superintendent Kathy Brittain, Deputy Michael Gourley, Deputy Nathan Wynder, Unit Manager Styka, Lieutenant Connolly, and Psychological Services Specialist Smith[21] during their weekly RHU rounds about not having a mattress the previous night and also showed them his empty bunk.[22]

He further attests that he spoke with Simpson, Kimmel, Morris, and defendant Sergeant Taylor on May 28 and repeatedly requested a mattress but was

---

[15] *Id.* at 3-4 ¶¶ 9-11.
[16] *Id.* at 3-4 ¶¶ 10-11.
[17] *Id.* at 4 ¶ 11.
[18] *Id.*
[19] Doc. 50 ¶ 22 (citing Doc. 50-1 at 197-213).
[20] *Id.* ¶ 23; Doc. 54-1 at 4 ¶ 12.
[21] *See* Doc. 50-1, Exhibit A pp. 1-83, 8/27/21 Dukes Deposition 8:2-6 [hereinafter "Dukes Dep."] (providing Defendants' names).
[22] Doc. 50 ¶¶ 24-25; Doc. 54-1 at 4-5 ¶ 16(a). Two of Dukes' paragraphs in his declaration are numbered "16," so the Court will refer to those paragraphs as "16(a)" and "16(b)."

4

ignored.[23] Around 10:00 p.m. that evening, Dukes claims that Taylor informed him that they were going to give him a mattress, T-shirt, and blanket, but later returned and told him that Simpson had ordered Taylor not to "give [Dukes] anything."[24] According to Dukes, when faced with the likelihood of spending another night on a bare metal bunk, he decided to voice suicidal ideations so that he could be moved to a different cell.[25] He also asserts that he forced correctional officers to "suit" up and use pepper spray so that he could get the condition of his RHU cell documented on video.[26]

Dukes filed suit in January 2021, alleging retaliation in violation of the First Amendment, unconstitutional conditions of confinement in contravention of the Eighth Amendment, and a claim invoking the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*[27] Dukes names as defendants eleven different prison officials at SCI Frackville: Brittain, Gourley, Wynder, Simpson, Taylor, Morris, Kimmel, Storm, Smith, Connolly, and Styka.[28] Defendants move for

---

[23] Doc. 54-1 at 5 ¶ 17.
[24] *Id.* ¶¶ 18-19.
[25] *Id.* ¶ 20; Doc. 50 ¶ 27.
[26] Doc. 54-1 at 5-6 ¶ 21.
[27] Doc. 1 ¶¶ 39-41. Although Dukes describes his Eighth Amendment claim as both (1) cruel and unusual punishment for denying him "a basic human need" and (2) "failing to protect" him from "the violation of [his] constitutional rights," *id.* ¶ 39, Dukes' Eighth Amendment allegations regarding lack of a mattress sound in conditions of confinement, not failure to protect. This interpretation is confirmed by Dukes' summary judgment briefing, where he discusses only a conditions-of-confinement claim and related case law. *See* Doc. 55 at 6-8.
[28] Doc. 1 at pp. 1-6.

summary judgment on all claims against them.²⁹  Their Rule 56 motion is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."³⁰  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."³¹  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."³²

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."³³  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."³⁴  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving

---

29  Doc. 49.
30  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
31  FED. R. CIV. P. 56(a).
32  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
33  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
34  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

party on the claim or claims at issue.[35]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[36]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[37]

### III.   DISCUSSION

Dukes alleges First and Eighth Amendment infringements.  He also attempts to raise a claim under the ADA.  Careful examination of Dukes' claims and the record in this case establishes that none of those claims can survive Rule 56 scrutiny.

### A.   First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[38]  To establish a First Amendment retaliation claim, a prisoner must show that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of

---

[35] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[36] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[37] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).
[38] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

ordinary firmness from exercising his First Amendment rights, and (3) the inmate's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[39]

Defendants challenge only the third element—causation. There are a variety of ways to prove causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[40] When a plaintiff relies solely on circumstantial evidence of temporal proximity at summary judgment, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.[41] However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[42] Another approach is to demonstrate "a pattern of antagonism coupled with timing."[43] Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[44]

The Court agrees with Defendants that Dukes has failed to proffer evidence of causation for his *prima facie* retaliation claim. Here, temporal proximity alone

---

[39] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[40] *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).
[41] *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).
[42] *Id.*
[43] *DeFlaminis*, 480 F.3d at 267.
[44] *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

does not establish a causal connection.  Dukes filed his earlier lawsuit in February 2020, and the alleged adverse action—denial of a mattress—occurred three months later in May 2020.  Without any other evidence of retaliation or antagonism, a three-month delay between the protected conduct and the adverse action is not so "unusually suggestive" that it would create a genuine dispute of material fact regarding causation.[45]

Additionally, Dukes has not offered competent evidence that any Defendant in this action was aware of his prior lawsuit.  A plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[46]  As noted above, there is no overlap of named defendants in the two lawsuits, so none of the instant Defendants would have been served with a copy of the February 2020 complaint.  Dukes' summary judgment filings, moreover, are devoid of attestation or evidence that Defendants knew of his prior lawsuit.  During his deposition, Dukes made conclusory statements to the effect that the instant Defendants "knew" about the prior lawsuit because they were on the RHU at SCI Frackville frequently,[47] but such conclusory speculation does not create a

---

[45] *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation to defeat summary judgment.").
[46] *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).
[47] *See* Dukes Dep. 7:15-24, 10:18-11:5.  However, Dukes also conceded that it was possible that Defendants had no knowledge of the earlier lawsuit.  *Id.* at 11:11-19.

genuine dispute of material fact regarding knowledge of the protected conduct.[48] For both of the foregoing reasons, the Court must grant Defendants' motion for summary judgment on Dukes' First Amendment retaliation claim.

### B. Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[49] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, warmth, or exercise."[50] To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements.[51] Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[52] Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[53] Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would

---

[48] *See El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) ("The non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way.").
[49] *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).
[50] *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).
[51] *See id.*
[52] *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[53] *Id.* (citing *Farmer*, 511 U.S. at 834).

subject the inmate to a substantial risk of serious harm."[54]

Defendants' primary argument is that, assuming Dukes was denied a mattress for one night, such a condition does not rise to the level of an Eighth Amendment violation. The Court is constrained to agree. Numerous district courts and courts of appeals have held that temporary denial of a mattress, even for multiple days and in combination with other deprivations, does not amount to a cognizable Eighth Amendment violation.[55] And Dukes does not cite a single case to the contrary. Moreover, the duration of the deprivation is a critical factor in the conditions-of-confinement analysis,[56] and here a single night without a mattress further undercuts Dukes' claim that prison officials violated his Eighth Amendment rights.

---

[54] *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).
[55] *See Freeman v. Miller*, 615 F. App'x 72, 77-78 (3d Cir. 2015) (nonprecedential) (seven days without mattress, shower, soap, recreation, or toilet paper due to suicide risk not unconstitutional); *Adderly v. Ferrier*, 419 F. App'x 135, 139 (3d Cir. 2011) (nonprecedential) (seven days without clothing, toiletries, mattress, and shower was harsh but not a deprivation of life's necessities); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7th Cir. 2005) (nonprecedential) (three days without a mattress and having to sleep on a metal bedframe did not violate Eighth Amendment); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothing, mattress, or bedding not Eighth Amendment violation); *Maldanado v. Dep't of Corr.*, No. 1:13-CV-2249, 2017 WL 3034768, at *3 (M.D. Pa. July 18, 2017) (four or five days without mattress not a cognizable conditions-of-confinement claim); *Milhouse v. Gee*, No. 1:09-CV-2134, 2011 WL 3627414, at *12 (M.D. Pa. Aug. 17, 2011) (two weeks without a mattress did not violate Eighth Amendment); *see also Coleman v. Hodges*, No. 18-CV-1152, 2018 WL 6618459, at *6-7 (W.D. Pa. Nov. 30, 2018) (collecting cases regarding constitutional rights of pretrial detainees and denial of mattress).
[56] *See Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (stressing that "*duration*" of confinement in a dry cell was crucial consideration in Eighth Amendment conditions-of-confinement claim).

Case law within and outside of this circuit conclusively holds that deprivation of a mattress for a single night does not rise to the level of an Eighth Amendment violation. So even taking Dukes' version of events as true—that he was denied a mattress on May 27 rather than that he refused a mattress—he cannot succeed on his conditions-of-confinement claim. Consequently, the Court must grant summary judgment in Defendants' favor on Dukes' Eighth Amendment claim.

### C. Americans with Disabilities Act Claim

Dukes' ADA claim requires only brief discussion. He attempts to assert personal civil liability against Defendants for alleged violations of Title II of the ADA. But whether Dukes is attempting to sue the individual Defendants under the ADA or through Section 1983, such a litigation tactic is foreclosed as a matter of law. Title II of the ADA protects against discrimination by a "public entity," not individuals.[57] Although the United States Court of Appeals for the Third Circuit has not directly answered the question of whether there can be individual liability under Title II of the ADA,[58] nearly all its decisions regarding personal liability under the ADA's various titles point toward the absence of individual liability.[59]

---

[57] *See* 42 U.S.C § 12132.
[58] *See Brown v. Deparlos*, 492 F. App'x 211, 215 n.2 (3d Cir. 2012) (nonprecedential) ("This Court has yet to address individual liability under Title II of the ADA[.]").
[59] *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (finding that plaintiff's claims "for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims

Additionally, other circuit courts of appeals have directly addressed the issue and found no individual liability under Title II.[60] Dukes has provided no basis in law or reason to hold otherwise. Consequently, the Court finds that judgment as a matter of law must be granted in Defendants' favor on Dukes' ADA claim.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion (Doc. 49) for summary judgment in its entirety. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j permit individual damages liability on the part of employees"); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting in dicta that "there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (finding that individual defendants did not own, lease, or operate Thiel College and thus were "not subject to individual liability under Title III of the ADA"); *Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (nonprecedential) (agreeing that plaintiff failed to state ADA claim against any non-entity defendants sued in their individual capacity) (citing *Koslow*, 302 F.3d at 178; *Emerson*, 296 F.3d at 189); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (nonprecedential) (noting individual defendant could not be held liable under ADA) (citing *Koslow*, 302 F.3d at 178); *Wardlaw v. Phila. Street's Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010) (nonprecedential) (explaining that plaintiff's ADA claims "were not actionable against the individual defendants") (citing *Koslow*, 302 F.3d at 178).

[60] See *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*).

13